IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COOPER LIGHTING, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>CORDELIA LIGHTING, INC., and<br>JIMWAY, INC.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:16-cv-02669-MHC<br>)<br>)<br>)<br>)<br>) |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY
LITIGATION PENDING PATENT OFFICE *INTER PARTES* REVIEW OF
VALIDITY OF ALL PATENTS-IN-SUIT</u>**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  ARGUMENT................................................................................................2

    A.   Discovery is Not Complete and a Trial Date Has Not Been Set. .........2

    B.   A Stay Will Simplify the Issues in the Case. .......................................4

    C.   Granting a Stay Will Not Unduly Prejudice Cooper............................9

III. CONCLUSION..........................................................................................13

i

# **TABLE OF AUTHORITIES**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017)..................................................................................4

*Hansen Mfg. Corp. v. Enduro Sys., Inc.*,
   2012 WL 381238 (D.S.D. Feb. 6, 2012)...........................................................12

*Huawei Tech. Co. Ltd. v. T-Mobile US, Inc.*,
   Civil Action No. 2:16-cv-00052-JRG-RSP (E.D. Tex. Sept. 9, 2017)..................4

*Internet Patents Corp. v. eBags, Inc.*,
   2013 WL 4609533 (N.D. Cal. Aug. 28, 2013) ....................................................5

*MiMedx Group, Inc. v. Liventa Bioscience, Inc.*,
   Civil Action No. 1:14-cv-1178-MHC (N.D. Ga. Apr. 6, 2015) ................. 2, 3, 11

*Tomco Equip. Co. v. Se. Agri-Sys., Inc.*,
   542 F. Supp. 2d 1303 (N.D. Ga. 2008) ................................................................3

**Statutes**

35 U.S.C. § 314(d) ......................................................................................................13

35 U.S.C. § 315(b) ......................................................................................................10

## I.     INTRODUCTION

Cordelia's motion asks the Court to immediately stay this action until the Patent and Trademark Appeal Board ("PTAB") completes its review and renders decisions on Cordelia's IPR petitions challenging the validity of all of Cooper's asserted patent claims. Cooper's opposition[1] greatly narrows the issues for the Court to decide. Cooper "**does not oppose Defendants' request for a stay through the institution phase of Defendants' IPRs,** which is scheduled to conclude in mid-February 2018." Cooper Opp. at 1 (bold and underlining in original). Hence, the parties agree that the immediate entry of a stay is warranted.

The only issue still in dispute is whether the Court should revisit the stay issue in mid-February, after the PTAB renders a preliminary, "institution" decision. "Cooper proposes that two weeks after the stipulated stay through the institution phase (or another convenient time for the Court), the parties and the Court have a status conference … [to] advise of the outcome of the institution decisions…." *Id.* However, as explained below, Cooper's agreement to an immediate stay undercuts each and every one of its arguments for such an unnecessary procedure. To obtain the benefits, the stay should remain in place until the PTAB renders its ultimate decision on the patentability of Cooper's claims.

---

[1] Plaintiff's Opposition-In-Part to Defendants' Motion to Stay Litigation Pending Patent Office *Inter Partes* Review of Validity of All Patents-In-Suit, filed September 12, 2017, Dkt 76 ("Cooper Opp.").

## II. ARGUMENT

The parties agree as to the three factors that govern the appropriateness of entering a stay: "(1) whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in the case; and (3) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant." *See* Cordelia's Memo[2] at 6; Cooper's Opp. at 5. In light of Cooper's acknowledgement that an immediate stay is appropriate, each of these factors strongly supports maintaining the stay for the duration of the IPRs.

### A. Discovery is Not Complete and a Trial Date Has Not Been Set.

Factor (1) identifies two questions for the trial court to consider. First, whether discovery is complete. It is undisputed that it is not. Second, whether a trial date has been set. Again, there is no dispute on this point. Hence, the literal language of this factor weighs strongly in favor of granting a stay.

When arguing against this factor, Cooper relies heavily upon the Court's prior decision in *MiMedx Group, Inc. v. Liventa Bioscience, Inc.*, Civil Action No. 1:14-cv-1178-MHC (N.D. Ga. Apr. 6, 2015), Dkt. 122, attached to Cooper's Opp. as Ex. B. In that case, plaintiff MiMedx opposed the entry of a stay prior to institution of the IPRs. *Id.* But here Cooper agrees that a stay based on the pendency of IPR petitions is appropriate at this stage, prior to institution.

---

[2] Memorandum in Support of Defendants' Motion to Stay Litigation Pending Patent Office *Inter Partes* Review of Validity of All Patents-In-Suit, August 21, 2017, Dkt. 68-1 ("Cordelia Memo").

Indeed, the later history of *MiMedx* is further instructive on this issue. When the *MiMedx* defendants renewed their motion for a stay, and the plaintiff dropped its opposition, the Court entered a stay. *MiMedx*, Dkt. 143, Ex. H[3] at 3 ("Plaintiff, in its sealed opposition to Defendants' motion, states it does not oppose staying with respect to the …['437 and '687 Patents]."). The Court entered the stay in the case for those patents. *Id.* at 4. Hence, entry of a stay is fully appropriate when the plaintiff agrees, even after denial of a motion to stay months earlier.[4]

Here, Cooper agrees to stay the case now. If the stay is entered, as requested by both parties, the case will not progress at all between now and mid-February. Cooper indicated it does not intend to proceed with discovery it has previously scheduled, while the stay motion is pending. Declaration of Lester J. Savit in Support of Defendants' Motion to Stay ("Savit Decl."), attached as Ex. I, at ¶¶ 24-25. Hence, this factor weighs strongly in favor of entering a stay now and would continue to strongly favor the stay in mid-February, whether or not the case is stayed during the intervening period.

---

[3] Cordelia submitted Exhibits A-G with its moving papers. It submits new Exhibits H-M herewith.

[4] Indeed, in *MiMedx*, the Court distinguished its analysis of Factor (1) from *Tomco Equip. Co. v. Se. Agri-Sys., Inc.,* 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008) on the basis that the plaintiff in *Tomco* had previously sought to extend discovery and claim construction. Cooper Ex. B (Dkt. 76-2) at 9. Here, Cooper is seeking to put off discovery and all other activity for five months.

### B.     A Stay Will Simplify the Issues in the Case.

Factor (2) focuses on the benefits to the litigation that will result from the IPRs. Those benefits include reducing litigation costs and preserving judicial resources. Cordelia Memo at 7-9. Even if some of Cooper's patent claims survive, the number of patent claims for the Court and jury to evaluate will be reduced - potentially greatly reduced. *Id*.

Moreover, the PTAB review process will very likely also reduce the number of patent validity defenses and increase an understanding of how any surviving claims distinguish over the cited prior art, which contributes to the claim construction and infringement analyses. *Id*. For example, Cooper's arguments to the PTAB for patentability over cited prior art may assist the Court to construe claim language. *Huawei Tech. Co. Ltd. v. T-Mobile US, Inc.*, Civil Action No. 2:16-cv-00052-JRG-RSP, Report and Recommendation (E.D. Tex. Sept. 9, 2017), Ex. J at 5-8 (citing *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359, 1361 (Fed. Cir. 2017). Again, by agreeing to enter a stay now, Cooper implicitly admits not only that PTAB institution of at least some of the Cordelia's grounds is likely, but also that the benefits will contribute one way or another to the litigation. The only reason for Cooper to agree to stay the case now is to obtain the very benefits offered by the ultimate PTAB decisions. It makes no sense to stay the action if it was going to be re-started before obtaining the benefits of the PTAB determinations.

Although undercut by its own agreement to stay, Cooper argues that it is too

4

early to know if there will be any benefits. None of these arguments hold up to close scrutiny. First, Cooper argues that the Cordelia's "statistics are highly misleading" because the cited chart mixes the results of IPRs on mechanical patents with IPRs of covered business methods ("CBMs"). Cooper Opp. at 7. Cooper contends that IPRs for CBMs "are particularly susceptible to invalidity challenges." *Id.* According to this logic, if the statistics for mechanical patent IPRs were separated from the statistics for CBM IPRs, the mechanical patent kill rate would be lower than cited for the combination.

     This argument comprises nothing more than attorney argument. Cooper provides no evidentiary support for concluding that the mechanical patent IPRs are less vulnerable to PTAB institution than CBM IPRs. The fact that the Patent Office combined the mechanical patent IPR statistics with those of CBMs strongly suggests that they are comparable. Further distillation of the numbers might just as easily show that mechanical patents are similarly vulnerable, or even more vulnerable to invalidity challenges than CBMs. Without any evidence, all these conclusions are equally reasonable. Even accepting Cooper's argument, however, a stay is not contingent upon an IPR resolving every issue in this action. Instead, the court considers whether the IPR proceedings will streamline the litigation. *Internet Patents Corp. v. eBags, Inc.*, No. 12-CV-03385, 2013 WL 4609533, at *2 (N.D. Cal. Aug. 28, 2013) ("[a] stay is not contingent upon the reexamination proceeding resolving every claim and issue in this action.").

Cooper correctly points out that Cordelia's statistic covers a broad time period, while Cooper proposes the application of a lower rate of institution gleaned from a more recent but shorter time period. However, no one can predict whether the future statistics covering IPRs filed in July, 2017, will be more consistent with the broader time period used by Cordelia or a narrower, more recent time period. Cordelia cites authority that the initiation rate is 72%. Cooper proposes that the more appropriate statistic is 64%. Cooper Opp. at 8 ("242 of 658 decisions (or 36%) on institution had been denied").[5] When applied to Cordelia's four IPR petitions, the difference between these two numbers is negligible.

Even if Cooper's lower statistic is employed, the chances that none of the four IPR petitions will be instituted is vanishingly small. If the chance of institution of a single IPR being denied is 0.36, the chance that neither of two IPR petitions will both be denied is 0.36 x 0.36 or 0.13. In the present case, the chances all four IPR petitions will be denied is 0.36 x 0.36 x 0.36 x 0.36 or 0.017. In other words, according to Cooper's own mathematics, the chances that none of Cordelia's IPR petitions will not be instituted is less than 2%![6]

---

[5] Cordelia expressed the statistic in terms of rates of institution. Cooper expresses the statistic in terms of rates of denial. As an IPR is either instituted or denied, Cooper's cited 36% rate of denial is a 64% rate of institution. The proper comparison is Cordelia's cited 72% statistic to Cooper's 64% statistic – a reduction of only 1/9th.

[6] Applying Cordelia's quoted statistics to the four pending IPRs results in a likelihood of no institution of any of Cordelia's four IPRs at less than 1%.

Finally, Cooper argues that "it is possible that it would decide to proceed in this litigation on those claims [for which institution has not been granted]."[7] *Id*. Cooper makes no commitment to actually do anything. Of course, Cooper could decide to dismiss claims that are the subject of institution, or it could just as easily decide not to dismiss those claims. Cooper does not provide any insight into the reasons or determinations that would play into that decision – it just asks the Court to trust that it *might* do something in the future that *might* have an impact on whether to enter a stay. In other words, Cooper is asking the Court defer decision on Cordelia's motion until Cooper's lawyers decide how they want to proceed. Needless to say, a party's continuing indecision is hardly a reason to defer resolution of a motion.

Second, Cordelia has counterclaimed for declaratory judgments that Cooper's patent claims are not infringed and are invalid. As a result, Cooper cannot unilaterally dismiss patent claims from the lawsuit without resolving those issues to the satisfaction of Cordelia. *See*, *for example*, the Joint Stipulation of Non-Infringement filed by the *MiMedx*. *MiMedx* Dkt. 198, Ex. K[8]. Cooper does not indicate that it would agree with Cordelia that the claims that are the subject of

---

[7] *See also* Cooper Opp. at 2 ("Cooper could elect to proceed in this litigation on only those claims that were not instituted.").

[8] Joint Stipulation of Non-Infringement for U.S. Patent Nos. 8,323,70, 8,642,092, and 8,703,207, Dismissal with Prejudice for Claims of Infringement of U.S. Patent No. 8,597,687, and Dismissal Without Prejudice of All Related Declaratory Judgment Counter-Claims, filed November 7, 2016.

institution are not infringed or are invalid, or both.  Cooper's "possible" dropping of patent claims in the future is nothing more than self-serving speculation without any substance.

Third, as indicated in the declaration attached to Cooper's Opp., Cooper's counsel and Cordelia's counsel discussed Cordelia's motion to stay for a total of 40 minutes on two occasions, the later of which was September 8, two business days before Cooper filed its opposition.  During those conferences, Cooper's counsel failed to mention that Cooper was considering dismissing patent claims that were the subject of IPR institution.  Savit Decl., Ex. I at ¶ 10. In other words, Cooper asks the Court to decide this motion based on an offer to resolve part of this action that Cooper has not even bothered to mention to Cordelia.  Cooper's failure to discuss this "possibility" to Cordelia is egregious in light of the parties' discussions about Cordelia's motion only two business days before Cooper filed its opposition.  Such game playing borders on bad faith.

Cooper argues that Cordelia admitted "that the most probable outcome is that some claims of the asserted patents will survive the institution phase."  Cooper Opp. at 8.  In fact, during the September 8 telephone call, Cordelia's counsel stated that "the most probable outcome was that only some of the grounds will be instituted."  Savit Decl., Ex. I at ¶ 9.  As the same claims are included in multiple grounds, even the institution of some of the 13 grounds would cover all of Cooper's patent claims.  For example, the '477 patent IPR petition includes three grounds (nos. 1-3) attacking

the patentability of claims 1-5, 7-10, 13-16 and 18-19.[9]  Cordelia Ex. B at ii-iii. Institution of any one of those three grounds will put those 15 claims in play. Similar overlap is found in all the other IPR petitions. *See* Cordelia Ex. C at ii-iii, Ex. D at ii, and Ex. E at ii. Hence, all the asserted claims may still be reviewed by the PTAB proceedings even if only some of the grounds are instituted.

Moreover, Cordelia's motion does not rely on ultimate Patent Office invalidation of all the asserted claims to obtain the benefits of reduced litigation expenses and preservation of judicial resources. Cordelia Memo at 7-9. Of course, there is a substantial chance that this case will be resolved in its entirety either by invalidation of all the asserted claims in the Patent Office or by settlement because of the ultimate PTAB findings one way or the other. *Id*. Cordelia's motion focused more on the advantages of "reduc[ing] the number of patents and claims that need to be resolved in this litigation" then an outright finding of invalidity on all claims. Cordelia Memo at 7. The benefits are obtained even if only some claims are the subject of institution, the issues in the case will still be simplified and the advantages of the stay obtained.

The second factor, therefore, also strongly supports entering the requested stay now and continuing it in force through final PTAB determinations.

### C. Granting a Stay Will Not Unduly Prejudice Cooper.

Cooper's agreement to stay undermines its arguments with respect to Factor

---

[9] Some of the grounds attack additional claims.

(3). Cooper criticizes Cordelia for waiting a year before filing the IPR petitions. However, Cooper is in no position to do so. Cordelia's allegation that Cooper waited more than a year before alleging infringement stands unrebutted. Cordelia's Memo at 11; Ex. G at 3-4. Cooper did not seek a preliminary injunction and now is willing to put the brakes on the litigation for months while the IPR petitions are considered by the PTAB. Cooper Opp. at 1; Cooper Ex. A at ¶¶ 3-5. The record is clear that Cooper is in no hurry to resolve this action by a trial on the merits.

Moreover, IPR petitions are long, complex and intricate legal documents. *See* Cordelia Exs. B-E. They are time consuming and expensive to prepare and expensive to file, costing hundreds of thousands of dollars in legal and expert fees and about a hundred thousand dollars in out-of-pocket Patent Office filing fees. Savit Decl., Ex. I at ¶ 18. The statute provides a year for a litigation party to file an IPR petition, and Cordelia filed within that statutory period. 35 U.S.C. § 315(b).

It was particularly reasonable for Cordelia not to start to prepare the petitions earlier in the year period. First, it did not know the identity of the particular patent claims being asserted by Cooper until Cooper served its infringement contentions in November 2016. By that time, Cooper and Cordelia were already engaged in settlement talks that might have led to resolution of the litigation prior to the end of the statutory period for filing the IPR petitions. Savit Decl., Ex. I at ¶¶ 11-13.

In particular, counsel for the parties met at Jones Day's Chicago office to discuss settlement on October 25, 2016. *Id*. at ¶ 13. This meeting was followed by

a telephone conference of the principals, without the participation of counsel, in January 26, 2017. *Id*. at ¶ 14. Subsequently, the parties, including multiple management and lawyers from each side, met in Jones Day's Dallas office on April 3, 2017. *Id*. at ¶ 15. Cooper did not make a monetary demand until after that meeting. *Id*. at ¶¶ 15-16. When Cordelia received the follow-up monetary demand, it became apparent that the parties were too far apart to expect to settle prior to the July cut-off date for filing the IPRs.[10] *Id.* at ¶¶ 17-22. At that point it proceeded to start to prepare the IPR petitions. *Id.*

Cooper relies upon the *MiMedx* case for the proposition that Factor (3) tilts against entering a stay prior to institution of IPRs. As discussed above, the Court granted the stay when MiMedx, the plaintiff, agreed to it. The PTAB ultimately found the claims of the '437 and the '687 patents, two of MiMedx's patents, to be unpatentable. Exs. L and M. The decision to stay saved the parties and Court the

---

[10] Cooper suggests that it was unable to reach agreement with Cooper on the motion to stay because Cordelia was resistant to the condition of "engag[ing] in formal mediation agreement in the fall of 2017." Cooper Opp. at 3; McCrum Decl., Cooper Ex. A at ¶ 2. In fact, Cooper never offered to agree to the relief sought in the pending motion. Savit Decl., Ex. I at ¶ 8. It initially sought the following concessions in exchange for a five-month stay: (1) the stay issue would be re-litigated after the PTAB's institution of the IPRs, (2) Cordelia would not file a motion to strike Cooper's late additions to its non-infringement contentions, and (3) Cordelia would agree to engage in a mediation. *Id.* at ¶ 6. When Cordelia declined this offer, Cooper subsequently offered to dropped the second and third conditions, but maintained the first. *Id.* at ¶¶ 7-8. That is the issue that the parties are now briefing. As far as engaging in mediation, the parties' current offers differ by a factor of more than 100. *Id.* at ¶ 17. A mediation when the case is in its current posture would be futile. *Id.*

11

time and resources otherwise required to adjudicate those patents if the stay was not entered. Here, Cooper agrees to the stay. Hence, entering a stay at this stage in this case, and continuing it through PTAB determinations of the IPR petitions, is consistent with *MiMedx*, will not unduly prejudice Cooper, and will save time and resources.

Cooper also argues that because it competes with Cordelia, a stay serves to give Cordelia an advantage in the marketplace. Cooper Opp at 10. Cooper, however, fails to substantiate this argument in any meaningful way. This vague assertion does not present a case of hardship or "undue" prejudice that should lead this Court to deny the stay. Moreover, even where parties are competitors, courts have found a stay is not unduly prejudicial to the patentee. *Hansen Mfg. Corp. v. Enduro Sys., Inc.*, No. 11-4030, 2012 WL 381238, at *5 (D.S.D. Feb. 6, 2012) (granting a stay pending IPR despite parties being competitors).

Although acknowledging that a stay is appropriate now, prior to institution, Cooper proposes that the stay issue be revisited shortly after the PTAB decisions on institution in mid-February. For the reasons stated above, this procedure makes no sense. All the reasons for entering the stay now are fully applicable for maintaining the stay through final determinations by the PTAB. If the PTAB institutes on Cordelia's IPR petition grounds encompassing all of Cooper's asserted claims, then Cooper clearly would have no objection to continuing the stay. If none of the grounds are instituted, the stay will automatically lift because the IPR proceedings

will be terminated. 35 U.S.C. § 314(d) ("The determination by the Director whether to institute an *inter partes* review under this section shall be final and nonappealable."). If only some, but not all of Cooper's claims are the subject of instituted claims, the stay should continue in force so that the parties and the Court can obtain the benefits of the PTAB's determinations. There is simply no reason to revisit these same factors again in mid-February.

### III. CONCLUSION

Cordelia filed IPR petitions including 13 grounds that challenge every Cooper patent claim asserted in this action. Cooper does not object to the immediate entry of a stay on this basis. There is no reason to revisit the stay after the PTAB's decision on institution because the benefits of the stay will be obtained whether all or only some of the claims are the subject of instituted grounds. In the unlikely event that none of the grounds are instituted, the stay will expire on its own.

Cordelia's motion should be granted in its entirety, and this litigation should be stayed pending the PTAB's final determination of the IPR petitions.

Dated: September 26, 2017        Respectfully submitted,

*/s/ Coby S. Nixon*
Coby S. Nixon (GA Bar No. 545005)
cnixon@taylorenglish.com
Seth K. Trimble (GA Bar No. 851055)
strimble@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400

13

        Atlanta, Georgia 30339
        Phone: (770) 434-6868

        Lester J. Savit (admitted *pro hac vice*)
        lsavit@onellp.com
        Paul Y. Feng (admitted *pro hac vice*)
        pfeng@onellp.com
        Stephen M. Lobbin (admitted *pro hac vice*)
        slobbin@onellp.com
        John E. Lord (admitted *pro hac vice*)
        jlord@onellp.com
        **ONE LLP**
        4000 MacArthur Boulevard, Suite 500
        Newport Beach, CA  92660
        Phone: (949) 502-2870

        *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that the foregoing was prepared in Times New Roman, 14 point font, in compliance with Local Rule 5.1C.

/s/ Coby S. Nixon
Coby S. Nixon
Georgia Bar No. 545005
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2017, I electronically filed the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY LITIGATION PENDING PATENT OFFICE *INTER PARTES* REVIEW OF VALIDITY OF ALL PATENTS-IN-SUIT with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record in this action.

/s/ Coby S. Nixon
Coby S. Nixon
Georgia Bar No. 545005
Attorney for Defendants