## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| COOPER LIGHTING, LLC,     ) | |
|           ) | |
|       Plaintiff,    ) | |
|           ) | |
|     v.        ) | **Civil Action No. 1:16-cv-02669-MHC** |
|           ) | |
| CORDELIA LIGHTING, INC.,   ) | |
|           ) | |
|       Defendant.   ) | |

CORDELIA LIGHTING, INC. AND                )
JIMWAY, INC.,                               )
                                            )
        Counterclaim Plaintiffs,            )
                                            )
v.                                          )
                                            )
COOPER LIGHTING, LLC,                       )
                                            )
        Counterclaim Defendant.             )

## PLAINTIFF COOPER LIGHTING, LLC'S
## <u>MOTION TO LIFT STAY OF PROCEEDINGS</u>

Plaintiff Cooper Lighting, LLC ("Cooper") hereby moves the Court to lift its

stay order of November 13, 2017 (Dkt. #85) and reopen the proceedings against

Defendant Cordelia Lighting, Inc. ("Cordelia").  A memorandum in support of this

Motion follows.  A proposed order lifting the stay is attached hereto as Exhibit A.

## I.    INTRODUCTION

As Cordelia acknowledged, it "filed IPR petitions including 13 grounds that challenge[d] every Cooper patent claim asserted in this action" – 48 claims from the four asserted patents.  (Dkt. #77 at 13.)  The PTAB denied institution on two asserted patents *entirely*.  Thus, the IPR challenges on those two patents are over, and litigation concerning those two patents is inevitable.  For the other two asserted patents, the PTAB *initially* granted institution on eighteen claims and denied institution on seven additional claims.[1]  Across all four asserted patents, the PTAB initially *denied* institution on 30 of the 48 claims (including claims from each asserted patent), and granted institution on *only* three of Cordelia's thirteen asserted grounds.  While Cooper was willing to pause this proceeding through the PTAB's

---

[1] After the PTAB's institution decisions, the Supreme Court issued a decision in *SAS Institute Inc. v. Iancu*, No. 16-969, 2018 WL 1914661 (S. Ct. Apr. 24, 2018), which held that the IPR statutory scheme does not permit the PTAB to institute an IPR on less than all claims challenged in the petition.  In other words, the PTAB can no longer partially institute an IPR for only some of the challenged claims, as it did for two patents here.  The PTAB must institute on all or none of the claims.  In response, the PTAB is in the process of entering orders in pending IPRs to address *SAS*.  In IPR2017-01859 on the Davis '956 patent (*see* Ex. G), the PTAB modified its institution decision to institute on all claims and all challenges.  As of this filing, the parties have not received an order from the PTAB in IPR2017-01857 on the Tickner '477 patent.  Regardless of *SAS*, there is no reason to believe that the PTAB will change its initial decision that Cordelia could not show that seven of the challenged claims from the Tickner '477 and Davis '956 patents are invalid.  *SAS* had no impact on the two asserted patents where the PTAB denied institution entirely.

institution decisions (and further while the parties discussed settlement), there is no reason to continue this stay now.  Continuing the stay will only accomplish further delay of unavoidable litigation.  And whereas here the parties are head-to-head competitors, and the plaintiff is seeking an injunction, unnecessary delay is highly prejudicial to the patent owner.

The particular facts of this case, as well as many court decisions – including decisions from this Court – support lifting the stay.  For example, maintaining the stay through the outcome of the two remaining IPRs will not simplify the case.  Even if the PTAB were to rule against Cooper on all instituted claims, and its decision was affirmed on appeal, this litigation would still be certain to proceed because there are no IPR proceedings on two of the four asserted patents.  And that unavoidable litigation must proceed with the exact same scope, regardless of the outcome of the IPRs.  Indeed, for the approximately half of the asserted claims that survived the IPR challenges and are certain to be litigated, the accused products, principal claim construction disputes, infringement claims, damages theories, and overall relief sought by Cooper are exactly the same as for instituted claims.  Thus, the litigation will proceed in the same fashion regardless of the outcome of the IPRs, and there will be no risk of unnecessary work or duplication of efforts by lifting the stay.

Further, lifting the stay would not risk inconsistent rulings.  For all of the asserted claims of two asserted patents (the Tickner '479 and '978 patents), the IPR process is over and there is no right to appeal.  As a result, there can be no risk of inconsistent rulings for those claims.  Further, Cordelia is estopped from making validity arguments in the litigation that were raised in the instituted IPRs, so there can be no risk of inconsistent rulings on that issue either.  The IPRs will not address the issues of infringement or damages, so the risk of inconsistent rulings on those issues is also not a concern.  Perhaps most importantly, both the IPR proceedings are scheduled to conclude no later than mid-February 2019, long before this case will go to trial.  This fact alone effectively substantially reduces any risk of inconsistent rulings.

The stage of this litigation and IPRs further supports lifting the stay.  This litigation has been pending for nearly two years; it is not in its infancy.  Substantial written and document discovery has been completed, depositions have been taken, contentions have been exchanged, claim construction briefing has closed, and an abundance of motion practice has been completed.  This relatively advanced stage supports lifting the stay.  The stage of the IPRs also supports lifting the stay.  The IPR hearings are scheduled to take place in September and October 2018, and final written decisions will issue in January and February 2019 – well before this case will

go to trial.  Thus, this Court and the parties will have the benefit of those decisions well in advance of any trial, which will not only reduce any potential for inconsistent rulings, but will allow Cooper the opportunity to drop any claims found unpatentable.

Finally, the Supreme Court's recent decision in *SAS Institute Inc. v. Iancu* does not support maintaining the stay.  As mentioned in the footnote above, the Court in *SAS* held that when the PTAB institutes an IPR proceeding with respect to at least one challenged claim, that it must address the patentability of all claims the petitioner challenged in the proceeding.  *Id.* at *9-10.  But even if claims in the two pending IPRs that the PTAB initially declined to further consider are now back before the PTAB, it is highly unlikely that the PTAB will reverse course from its original decision that Cordelia did not show a reasonable likelihood it would prevail with respect to those claims and grounds.  In any event, any modifications to the two pending IPRs do not impact the two patents for which no IPR was instituted.  Thus, *SAS* does not change the fact that this case will have to proceed in all aspects (and with the same scope) on the 23 asserted claims in the Tickner '479 and '978 patents for which the PTAB denied Cordelia's IPR petitions.

In short, the only result of maintaining the stay will be further delay of inevitable litigation and associated work that the parties must complete regardless of the outcome of the IPRs.  The case should proceed without that further delay.

## II.   BACKGROUND

Cooper filed its Complaint in the instant case on July 22, 2016.  (Dkt. #1.) The Complaint asserted that Defendants infringed four patents: U.S. Patent Nos. 8,348,477 (the "'477 patent"); 8,348,479 (the "'479 patent"); 8,789,978 (the "'978 patent"); and 9,010,956 (the "'956 patent", collectively "the asserted patents").  (*See id*. ¶¶ 17-50.)  All of the patents relate to LED downlights.  In its initial infringement contentions, Cooper asserted 48 claims in the asserted patents against Cordelia.

Cordelia filed IPR petitions on each of the 48 asserted claims in the asserted patents on July 26, 2017, one day before the deadline by which Cordelia would have been statutorily barred from filing any petitions, raising multiple grounds for invalidity of the claims in each petition.  (*See* Dkt. #68, Exs. B-E; 35 U.S.C. § 315(b).)  Cordelia moved to stay this proceeding until resolution of the IPR proceedings on August 21, 2017.  (*Id.*)  Cooper did not oppose a stay of the litigation through the institution phase of the IPRs, but opposed an unconditional stay through the conclusion of all IPR proceedings.  (*See* Dkt. #76 at 11.)

On November 13, 2017, the Court granted Cordelia's Motion to Stay "until further order of the Court." (Dkt. #85 at 24.) In February 2018, the PTAB denied institution on all asserted claims in IPR2017-01858 (on the '479 patent) and IPR2017-01860 (on the '978 patent) and, therefore, there will be no further IPR proceedings with respect to those two patents. In January and February 2018, the PTAB granted partial institution on certain of the asserted claims in IPR2017-01857 (on the '477 patent) and IPR2017-01859 (on the '956 patent), but denied institution on a number of other claims.[2] The PTAB decisions on institution are attached hereto as Exhibits B-E.

In summary, of the 48 asserted claims, the PTAB only instituted review of ***18 claims*** (14 from the '477 patent and 4 from the '956 patent). Two patents – the '479 and the '978 patents – ***will not be reviewed at all***. Moreover, the PTAB also declined to review three claims of the '477 patent (Ex. B at 13, 21, 29) and four claims of the '956 patent (Ex. D at 22, 26). After the Supreme Court's decision in *SAS*, the PTAB modified its institution decision to institute IPR on all claims and on all grounds for the asserted claims of the '956 patent. (Ex. G.) The PTAB has not yet issued an order addressing *SAS* in the IPR on the '477 patent.

---

[2] Cordelia did not seek rehearing of any of the PTAB's institution decisions, which largely rejected Cordelia's reasoning.

On March 1, 2018, the parties informed the Court of the status of the PTAB IPR decisions.  (Dkt. #107.)  At that time, the *SAS* decision had yet to issue.  The parties sought to maintain the stay through private mediation.  (*Id.* at 1.)  Cooper stated that, if the mediation was unsuccessful, it intended to move to lift the stay. (*Id.*)

The parties engaged in private mediation in Chicago, Illinois on March 19, 2018.  Additional negotiations through the mediator occurred thereafter. Unfortunately, the parties were unable to resolve their disputes.  Therefore, Cooper moves this Court to lift the stay on these proceedings.

## III.   LEGAL STANDARD

The party seeking to maintain a stay bears the burden of showing that such a stay is appropriate. *See Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-CV-1727, 2013 U.S. Dist. LEXIS 67790, at *3 (M.D. Fla. May 13, 2013).  "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."  *See MiMedx Group, Inc. v. Liventa Bioscience, Inc.*, No. 1:14-CV-1178-MHC (N.D. Ga. Apr. 6, 2015), ECF No. 122 at 6 (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)), attached hereto as Ex. F.  "The Court should not ignore the potential difficulties" of a stay through all appeals including "the possible length of"

the review, and the fact that the IPR process "only considers the validity of the patent with regard to prior art."  *Id.* at 6-7 (citing *Tomco² Equip. Co. v. Se. Agri-Sys, Inc.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008) (internal citations omitted).

Courts consider three factors in determining the appropriateness of a stay, including a stay through all appeals: (1) whether a stay will simplify the issues in the case; (2) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; and (3)  whether discovery is complete and a trial date has been set; *Id.* at 7 (citing *Interface, Inc. v. Tandus Flooring, Inc.*, No. 4:13-CV-46-WSD, 2013 U.S. Dist. LEXIS 158608, at *13 (N.D. Ga. Nov. 5, 2013).)

## IV.   ARGUMENT

### A.    <u>Each Of The Relevant Stay Factors Supports Lifting The Stay.</u>

#### 1.    *Maintaining The Stay Will Not Simplify The Issues In This Case.*

The PTAB's decisions make clear that maintaining a stay of this proceeding until final appeal (or even the issuance of the final written decisions in the two pending IPRs) will not streamline or simplify the case.  The '479 and '978 patents – including all of the ***twenty-three asserted claims*** in those patents – survived Cordelia's challenges.  Thus, even if Cordelia can convince the PTAB to invalidate each of the claims that were instituted in the other two patents (which is unlikely, particularly for the claims where the PTAB initially denied institution), nearly half

of the 48 asserted claims will remain to be tried in this civil action.  The litigation, therefore, will proceed no matter what; and given the substantial number of claims that survived institution, the litigation will proceed with the exact same scope regardless of the outcome of the IPRs.

Courts routinely deny stays of litigation under circumstances like these where the PTAB institutes IPR proceedings on only a subset of asserted patents.  Indeed,

> [A] stay will not simplify the issues in question and trial of the case, primarily because the … [same] technology is at issue in both the IPR patents and other patents-in-suit not subject to the IPR.  In other words, discovery on those products will proceed regardless of whether the stay is granted or not; the burden of litigation will not be reduced even if a stay were put in place.

*Intellectual Ventures I LLC v. Toshiba Corp.*, No. 13-453-SLR/SRF, 2015 WL 3773779, at *3 (D. Del. May 15, 2015); *see also SCVNGR, Inc. v. eCharge Licensing, LLC*, No. 13-12418-DJC, 2014 WL 4804738, at *10 (D. Mass. Sept. 25, 2014) (citing additional cases and finding where only 3 of 8 patents were subject to IPR, "this factor weighs quite strongly against a stay"); *RR Donnelley & Sons Co. v. Xerox Corp.*, No. 12-cv-6198, 2013 WL 6645472, at *3 (N.D. Ill. Dec. 16, 2013) ("Granting a stay as to the entire litigation would cause the four unchallenged ... patents to languish unresolved for an unspecified amount of time.").

Here, as in *Intellectual Ventures*, the instituted and non-instituted asserted claims implicate the same technology, the same accused products, the same principal disputed claim terms, and the same secondary considerations of non-obviousness. The same issues of infringement, validity, and damages will survive no matter the outcome of the IPRs.  Accordingly, if the Court lifts the stay, the parties would not engage in unnecessary work or discovery, as that work and discovery **will have to be done** regardless of the outcome of the two pending IPRs.  In other words, the "burden of litigation will not be reduced" by maintaining a stay.  *IV I*, 2015 WL 3773779, at *3.  There is therefore no reason for further delay of these actions.

Also instructive is this Court's decision in *Mimedx Group, Inc. v. Liventa BioScience, Inc.*  (Ex. F.)  In that case, the **plaintiff did not oppose** a partial stay of the litigation with respect to two patents where all asserted claims from those two patents were instituted.  *Id.* at 3.  But the plaintiff did oppose a stay of the litigation for a third related patent where the PTAB denied institution on any asserted claims. *Id.*  Even though an agreed-upon stay was in place for two asserted patents where all claims were instituted, this Court denied the request to stay the litigation for a third patent because it could find no simplification of issues that would result from staying a case concerning a patent having claims that had not been instituted.  *Id.* at 8.  The same logic applies here – two asserted patents survived institution entirely and,

therefore, no logical rationale supports maintaining a stay with respect to those patents.  And no logical reason exists for maintaining the stay for the other two patents either.  Lifting the stay will not alter the scope of or complicate discovery (the accused products are the same for the instituted and non-instituted claims), claim construction, infringement theories, validity challenges (Cordelia is already estopped from challenging validity on the instituted grounds), or damages theories. Further, because this Court and the parties will have the benefit of the IPR decisions prior to any trial, Cooper will have the opportunity to drop any claims found unpatentable by the PTAB (and likely would as part of the normal process of reducing asserted claims prior to trial).

In view of the PTAB's decisions, Cordelia's arguments in favor of a stay no longer hold any weight.  (*See* Dkt. #68-1 at 7-9; Dkt. #77 at 4-9.)  Cordelia previously argued that judicial economy will be served because it will be estopped from asserting its invalidity arguments should it lose before the PTAB, and having to make those arguments during litigation would be wasteful.  (Dkt. #68-1 at 8-9.) Cordelia's logic is nonsensical for a number of reasons.  *First,* because the PTAB instituted IPR for some claims, Cordelia is already estopped from making those arguments in the litigation.  Thus, it need not worry about wasting time and resources on those arguments now.  *Second,* even if there was any potential for wasting

resources in this litigation on arguments for which estoppel would apply, that concern is only theoretical.  Cordelia appears to be making the same section 102/103 prior art arguments in this litigation with respect to claims that were not instituted as the arguments being made in the IPRs for claims that were instituted.  Thus, those arguments will be developed by Cordelia either way.  Accordingly, Cordelia's argument does not provide any legitimate basis to maintain the stay.

For the above reasons, this factor weighs heavily against maintaining the stay.

### 2.     *Cooper Would Be Prejudiced And Cordelia Advantaged By Maintaining The Stay.*

Regarding prejudice, courts "have looked to four sub-factors": "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties."  *MiMedx*, Ex. F at 12 (citing *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011); *Rensselaer Polytechnic Inst., v. Apple Inc.*, No. 1:13-cv-0633, 2014 U.S. Dist. LEXIS 5186, at *11-12 (N.D.N.Y. Jan. 15, 2014)).  The totality of these sub-factors weigh against maintaining the stay.

The first factor (*i.e.*, timing of the review request) supports lifting the stay. Cordelia served the IPR petitions **on the day** the statutory grace period expired. Similar courts have found this delay to be inexcusable.  *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013)

13

(holding that delay of nearly a year weighed in favor of finding prejudice to plaintiff). Cordelia's attempt to explain their delay or blame Cooper has no merit.[3] (*See* Dkt. #68-1 at 11-12.) Cordelia had been aware of the asserted claims for ***nine months*** – and were required by local patent rules to serve their invalidity contentions ***eight months*** – before they served their IPR petitions. The art that Cordelia relied on in the petitions has been publicly available for years. While Cordelia was certainly permitted to wait until the last day, it did not have to do so and could have proceeded much earlier, as many other similarly situated defendants have done. The Court is free to view the delay as prejudicial to Cooper. *See*, *e.g.*, *IV I*, 2015 WL 3773779, at *2 (quoting *Belden Techs., Inc. v. Superior Essex Comm'ns LP*, No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010)).

The second factor (*i.e.*, timing of the request for a stay) also favors lifting the stay, especially when taken in combination with how long it took Cordelia to file the IPRs. This case has been pending for nearly 2 years. Cordelia waited nearly a month

---

[3] As courts have recognized, "[t]he fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case." *Universal*, 943 F. Supp. 2d at 1034; *see also MiMedx*, Ex. F at 15 (citing *Cooper Notifications, Inc. v. Twitter, Inc.*, No. 09-856-LPS, 2010 U.S. Dist. LEXIS 131385, at *15 (D. Del. Dec. 13, 2010)) ("There are a number of reasons that a plaintiff may choose to forego this option that are unrelated to whether the parties are competitors.").

from the time it filed its IPRs to file its motion to stay, which was more than a year after this case was filed.  By that time, the parties had exchanged significant discovery in this case (including tens of thousands of documents), deposed third parties, completed briefing on claim construction, and briefed other issues (*e.g.*, venue).  Indeed, the parties only await a *Markman* hearing and order to complete fact discovery.  This Court has found that cases similarly positioned and postured weighed against a stay.  *See MiMedx*, Ex. F at 7-9 ("Although the *Markman* hearing has not yet occurred, this case is not in its initial stages and a significant portion of discovery has been served and briefs have been filed"); *see also Tomco*[2], 542 F. Supp. 2d at 1312.  Accordingly, this factor does not support maintaining the stay.

The third factor (*i.e.*, status of the review proceedings) supports lifting the stay as well.  The IPRs were filed over 9 months ago.  The IPR hearings are currently scheduled for September and October, 2018 and final decisions are expected in both by mid-February 2019.  The IPRs will conclude long before this case goes to trial.  At that point, Cooper will be able to decide which of the claims to assert at trial and very well may only assert those that survive the IPR challenges.

Finally, the fourth factor (*i.e.*, the relationship of the parties) supports lifting the stay.  The parties in this case are undisputedly direct competitors.  As this Court has acknowledged, "there is a reasonable chance that delay in adjudicating the

alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *MiMedx*, Ex. F at 14 (citing *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 U.S. Dist. LEXIS 13081, at *7 (D. Del. Jan. 31, 2013); *see also Universal*, 943 F. Supp. 2d at 1034 ("Plaintiff may lose customers that it would not have lost had the case proceeded"). Here, maintaining the stay (including through any appeals, as Cordelia requests) would permit Cordelia to continue their infringement indefinitely, delay an injunction to the detriment of Cooper, and potentially enhance their market share to the further detriment of Cooper.

### 3.   *The Litigation Has Progressed Far Enough To Justify Lifting The Stay And Proceeding On The Merits.*

This case has been pending for almost two years. As detailed in prior briefing, the parties have exchanged significant discovery in this case (including tens of thousands of documents), deposed third parties, and completed briefing on claim construction over a year ago. Indeed, the parties only await a *Markman* hearing and order to complete fact discovery. This Court has found that, regardless of whether a hearing or trial date has been set in a case, that this factor weighed against a stay in cases in similar stages of litigation. *See MiMedx*, Ex. F at 7-9 ("Although the *Markman* hearing has not yet occurred, this case is not in its initial stages and a significant portion of discovery has been served and briefs have been filed"); *see*

*also Tomco[2]*, 542 F. Supp. 2d at 1312.  Accordingly, all factors weigh in favor of the Court lifting the stay.

### B.   The Recent *SAS* Decision Does Not Support Maintaining The Stay.

*SAS* does not change the fact that the stay should still be lifted with respect to all asserted patents (not just for the two patents where the PTAB denied Cordelia's IPR petitions).  That the PTAB will further review claims in the Davis '956 patent and Tickner '477 patent does not alter the fact that this case will have to proceed in all aspects (and with the same scope) on the other two patents (and 23 asserted claims).  Indeed, other than the overall number of claims at issue (which will be reduced as the case progresses anyway), lifting the stay with respect to all patents adds nothing to discovery or any other aspect of this case.

## V.   CONCLUSION

Cordelia challenged all of the asserted claims in the four patents in this litigation before the PTAB and did not prevail for nearly half of the asserted claims in this case.  Thus, regardless of the outcome of the two pending IPRs, this case can and will proceed, and it should proceed with all of the asserted patents.  While Cooper was willing to stay the proceedings to evaluate the PTAB's institution decisions, there is no sense in delaying resolution on the merits any further.  For the

foregoing reasons, the Court should lift the stay and reopen the proceedings against

Cordelia in their entirety.


Dated:  May 4, 2018

/s/ *Geoffrey K. Gavin*
William B. B. Smith
Ga. Bar No. 664637
Geoffrey K. Gavin
Ga. Bar No. 288012
J. Jason Williams
Ga. Bar No. 142689
Rachel A. Geist
Ga. Bar No. 296136
JONES DAY
1420 Peachtree Street, NE, Suite 800
Atlanta, GA  30309-3053
Tel: 404-521-3939
Fax: 404-581-8330

Calvin P. Griffith (*pro hac vice*)
Ryan B. McCrum (*pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114-1190
Tel:  216.586.3939
Fax:  216.579.0212

Attorneys for Plaintiff
COOPER LIGHTING, LLC

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

Respectfully submitted,

/s/ *J. Jason Williams*
J. Jason Williams
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 4, 2018, a true and correct copy of the foregoing PLAINTIFF COOPER LIGHTING, LLC'S MOTION TO LIFT STAY OF PROCEEDINGS was filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.


/s/ *J. Jason Williams*
J. Jason Williams
Attorney for Plaintiff