IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COOPER LIGHTING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORDELIA LIGHTING, INC. | ) | Civil Action No. 1:16-cv-02669-MHC |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| | ) | |
| CORDELIA LIGHTING, INC. and | ) | |
| JIMWAY, INC., | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOPER LIGHTING, LLC, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO
COOPER LIGHTING, LLC'S MOTION TO LIFT STAY OF
PROCEEDINGS**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................2

III.    COOPER'S MOTION TO LIFT THE STAY SHOULD BE DENIED ........8

        A.   Requirements for Staying Litigation Pending IPR Decisions..............8

        B.   The Litigation Remains in the Discovery Phase with No Trial Date. ..9

        C.   A Stay Will Simplify the Issues to be Resolved in this Case. ............11

        D.   A Stay Will Not Unduly Prejudice Cooper.........................................20

IV.     CONCLUSION...............................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adair v. Boat Dock Innovations, LLC,*
   No. 1:12-cv-1930-SCJ, 2013 U.S. Dist. LEXIS 63921 (N.D. Ga. Feb. 27, 2013)
   ...................................................................................................................21

*AirWatch LLC v. Good Tech. Corp.*,
   No. 1:14:-CV-02281-SCJ, Dkt. 45 (N.D. Ga. Feb. 13, 2015) ..............................8

*Barco, N.V. v. Eizo Nanao Corp.*,
   No. 1:11-CV-2964-TCB, Dkt. 72 (N.D. Ga. Feb. 6, 2015) .................................20

*Blatchford Prods., Ltd. v. Freedom Innovations, LLC,*
   No. 1:14-CV-529, Dkt. 51 (S.D. Ohio Sept. 29, 2015) ......................................20

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988).............................................................................8

*Graywire, LLC v. Ciena Corp.*,
   No. 1:08-CV-2993-BBM, 2009 U.S. Dist. LEXIS 131906 (N.D. Ga. July 17,
   2009)......................................................................................................................8

*Intellectual Ventures I LLC v. Toshiba Corp.*,
   No. 13-453-SLR/SRF, 2015 WL 3773779 (D. Del. May 15, 2015) ..................16

*Intellectual Ventures II LLC v. SunTrust Banks, Inc.*,
   No. 1:13-cv-02454-WSD, 2014 U.S. Dist. LEXIS 142295 (N.D. Ga. Oct. 7,
   2014)......................................................................................................................9

*Interface, Inc. v. Tandus Flooring, Lie.,*
   No. 4:13-CV-46-WSD, 2013 U.S. Dist. LEXIS 158608 (N.D. Ga. Nov. 5, 2013)
   ...................................................................................................... 9, 10, 11

*IP Co., LLC v. Tropos Networks, Inc.*,
   No. 1:06-CV-0585-CC, Dkt. 188 (N.D. Ga. March 5, 2014).........................9, 14

*MiMedx Group, Inc. v. Liventa BioScience, Inc.*,
   No. 1:14-cv-1178-MHC (N.D. Ga. Apr. 6, 2015) ....................................... 17, 18

ii

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    No. 12-1744, 2013 U.S. Dist. LEXIS 92416 (D. Del. July 2, 2013) ...................12

*Nexans, Inc. v. Belden, Inc.*,
    No. 12-1491-SLR-SRF, 2014 U.S. Dist. LEXIS 20116 (D. Del. Feb. 19, 2014)12

*SAS Inst., Inc. v. Iancu*,
    200 L. Ed. 2d 695, 2018 WL 1914661 (2018).......................................................5

*Southwire Co. v. Cerro Wire, Inc.*,
    No. 3:08-CV-92-JTC, 2009 U.S. Dist. LEXIS 131922 (N.D. Ga. May 12, 2009)8

*Tomco Equip. Co. v. Se. Agri-Sys., Inc.*,
    542 F. Supp. 2d 1303 (N.D. Ga. 2008) ................................................................22

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014).............................................................................23

**Statutes**

35 U.S.C. § 315 ...................................................................................................... 14, 15

35 U.S.C. § 318 ...........................................................................................................14

35 U.S.C. 315 ..............................................................................................................2

**Rules**

37 C.F.R. § 42.100 .......................................................................................................5

37 CFR § 42.24 ...........................................................................................................7

## I.    INTRODUCTION

This is a patent infringement action in which Cooper Lighting, LLC ("Cooper") alleges that Cordelia Lighting, Inc. ("Cordelia") infringes its patents. Cordelia and Jimway, Inc. ("Jimway") counterclaim seeking a declaration that Cooper's patents are not infringed and are invalid.  The Patent Trial and Appeal Board ("PTAB") has instituted and is currently reviewing Cordelia's *Inter Partes* Review ("IPR") challenges to the validity of Cooper's Davis U.S. Patent No. 9,010,956 (the "Davis patent" or "'956 patent") and its Tickner U.S. Patent No. 8,348,477 (the "Tickner patent" or "'477 patent").  The PTAB's final decision in the IPRs will address all the claims of the Tickner and Davis patents asserted by Cooper in this lawsuit and all invalidity grounds asserted in Cordelia's IPR Petitions.

The parties and the Court have previously recognized the value of staying this litigation in light of the PTAB administrative proceedings on the very patents at issue here.  The IPRs are now more than halfway completed.  The PTAB's final decisions will resolve a significant portion of the validity issues in this case either by eliminating claims or entire patents from the case, or by estopping Cordelia and Jimway[1] from asserting those same grounds.[2]

_____

[1] Although not technically the Petitioner, Jimway has been identified in Cordelia's IPRs as a real party-in-interest.  Dkt. 68-3, 68-4, 68-5, and 68-6 at 1.

[2] "The petitioner in an *inter partes* review of a claim in a patent … may not assert

Cordelia is a solvent company able to pay a future money judgment.  Indeed, Cooper did not seek to enjoin Cordelia from the accused activities during the litigation and made no showing that it will be able to meet the requirements to obtain a permanent injunction in the future.  If the asserted patent claims are found to be valid and infringed, there is little risk that Cooper will not be able to achieve a full remedy because of the stay period or that it would otherwise be unduly prejudiced by waiting for a full record on the patents to be developed in the Patent Office before reopening the litigation.  Hence, Cooper's motion should be denied and the Court's November 13, 2017 Order (Dkt. 85) staying this action should remain in place.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2016, Cooper filed suit against Cordelia alleging infringement of (1) the Davis patent, U.S. Patent No. 9,010,956 ("the '956 patent" or "Davis patent"), and (2) the Tickner patents, U.S. Patent Nos. 8,348,477 ("the '477 patent"); 8,348,479 ("the '479 patent"); and 8,789,978 ("the '978 patent").  Dkt. 1. The Tickner patents contain the same description of the technology and claim priority to the same provisional and initial non-provisional patent applications. They are essentially the same patent, but with different claims sets.  (These three

---

… in a civil action arising in whole or in part under section 1338 of title 28 … that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review."  35 U.S.C. 315(e)(2).

2

patents are collectively referred to as the "Tickner patents.")

Pursuant to the Court's Scheduling Order, the parties are still in the fact discovery phase. Dkt. 21 at 18-20. The parties have exchanged written discovery, but that is not complete. No party depositions have been taken.[3] Fact discovery extends until 45 days after entry of the *Markman* order. *See* Dkt. 21. But no Markman claim construction hearing has been scheduled. *Id.* No expert reports have been exchanged and no expert discovery has been scheduled or taken. *Id.*

On July 26, 2017, Cordelia submitted IPR petitions that challenged the validity of the Davis and Tickner patents. Dkt. 68-3, 68-4, 68-5, and 68-6. On August 21, 2017, Cordelia moved to stay this action pending resolution of the IPRs. Dkt. 68. Cooper stipulated to stay the litigation. *Id*. at 2. However, Cooper proposed that after the PTAB issues decisions on institution, "the parties and the Court have a status conference so that the parties can advise as to the outcome of the institution decisions and how each party proposes that the litigation proceed." *Id*.

The Court granted the motion to stay: "The Court finds that a stay is appropriate through *at least* the PTAB's institution decision." Dkt. 85 at 23 (emphasis added). The Court further ordered the parties to "provide a status report

---

[3] Cordelia has deposed two third-party companies that were making and selling LED downlights at least as early as 2006, prior to Cooper's earliest patent filing dates.

3

to the Court as to the status of the PTAB's decision on March 1, 2018." *Id*.

On January 16, 2018, the PTAB issued a Decision on Institution under 35 U.S.C. § 314 for the Davis patent. Ex. D.[4]  The Decision determined that Cordelia had demonstrated a reasonable likelihood that it would establish that at least one of the challenged claims of the '956 patent is unpatentable. *Id*. at 2.  In particular, the PTAB recognized that it was reasonably likely that claims 9 and 10 were invalid in light of a single reference (Chou U.S. Published Patent Application 2012/0206926) and that claims 6 and 8-10 were obvious in light of the combination of Chou and a second reference (Knoble U.S. Patent No. 8,070,328). *Id*. at 15-19 and 22-26.  At the same time, the PTAB issued a Scheduling Order setting a series of "due dates" ending with an Oral Hearing on September 20, 2018.  Ex. H.

Similarly, on February 14, 2018, the PTAB issued a Decision on Institution for the Tickner patent. Ex. B.[5]  The PTAB specifically found on that abbreviated record that certain claims were reasonably likely to be found to be unpatentable. *Id*. at 2.  In particular, it found that claims 1-5, 7-11 and 13-16 were likely obvious in light of a combination of two references (Lumodan EPO Published Application EP 1600691 and DeCicco U.S. Patent No. 6,588,922). *Id.* at 22-26.  The associated Scheduling Order set due dates culminating with an Oral Hearing on

---

[4] Cooper's motion attached Exhibits A-G.  This opposition attaches Exhibits H-R.
[5] On the same day, the PTAB issued Decisions declining to institute the IPRs for the two other Tickner patents.  Exs. C and E.

September 20, 2018.  Ex. I.

On April 24, 2018, the United States Supreme Court held that a decision to institute under 35 U.S.C. § 314 must include all claims challenged in the petition. *SAS Inst., Inc. v. Iancu*, 200 L. Ed. 2d 695, 707, 2018 WL 1914661, at 10* (2018). Subsequently, the PTAB issued an Order in the Davis '956 patent IPR to "modify our institution decision to institute on all of the challenged claims and all of the grounds presented in the Petition, including that:  (1) claims 1, 2, 4-6, and 8 are anticipated under 35 U.S.C. § 102 by Chou; and (2) claims 1, 2, 4, and 5 would have been obvious under 35 U.S.C. § 103 over Chou and Knoble."  Ex. J at 2.  The PTAB reset some of the due dates in the schedule, but maintained the Oral Argument date of September 20, 2018.  Ex. K at 3-4.

The PTAB also issued an Order in the Tickner '477 patent IPR to "modify our institution decision to institute on all of the challenged claims and all of the grounds presented in the Petition, including: (1) anticipation of claims 1-5, 7-10, 12-16, 18, and 19 by Zhang; (2) obviousness of claims 1-5, 7-16, 18, and 19 over DeCicco and Stimac; (3) obviousness of claims 18 and 19 over Lumodan and DeCicco; and (4) obviousness of claims 1 and 12 over Jones and Stimac."  Ex. L at 2.  The PTAB also reset the due dates in the schedule.  Ex. M at 4.  The oral argument is set for November 14, 2018.  *Id*.

The IPR regulations, 37 C.F.R. § 42.100(c), require final decisions to be

issued within one year of the date of decisions on institution pursuant to 35 U.S.C.

314.  When modifying the scope of the institution in light of *SAS Inst. Inc.*, the

PTAB did not issue new decisions, only orders modifying the previously issued

one.  Exs. J and L.  Hence, a final decision on the '956 patent IPR must be issued

by January 16, 2019, and a final decision on the '477 patent IPR must be issued by

February 14, 2019.

On March 1, 2018, the parties submitted to the Court a "Joint Status Report

Regarding IPR Proceedings."  Dkt. 107.[6]  The parties asked for "the stay [to]

continue while the parties engage in mediation."  *Id*. at 1.  In response, the Court

"agrees that continuing the stay is appropriate in light of these developments."

Dkt. 108 at 1.  The parties met with a private mediator in Chicago on March 19,

2018.  Although substantial progress was made toward settlement, the case has not

yet settled.

The due dates set for the IPRs are aggressive, requiring substantial effort by

the parties until the oral hearings.  Cooper, as "Patent Owner," has responses to

Cordelia's IPR Petitions due beginning next week, on May 25, 2018, and then

---

[6] As discussed above, after the parties submitted the March 1, 2018, status report,
the United States Supreme Court issued *SAS Inst., Inc.*, and in response the PTAB
modified its decisions on institution.  Exs. J and L.  As a result, the description of
the scope of the instituted claims and grounds for the '956 patent and '477 patent
IPRs in the March 1 status report is now out-of-date.  All the claims and all the
grounds are now instituted.  *See id*.

again four weeks later, on June 22, 2018.  Ex. K at 3;  Ex. M at 4.  Cooper's responses will need to address all the claims and grounds in the Petitions and are highly complex documents up to 14,000 words in length.  37 CFR § 42.24(b)(2). Cooper also needs to respond to Cordelia's technical expert's declarations submitted with the Petitions, very likely with counter declarations of its own expert.

The PTAB schedules require Cordelia, as "Petitioner," to file replies on August 6 and September 12.  Ex. K at 3; Ex. M at 4  Again, these are complex documents that have high word limits for addressing Cooper's arguments on all the claims and grounds.  *See* 37 CFR § 42.24(c) (5,600 words).

In the five weeks between the due dates for Cordelia's reply in the '956 patent IPR and its reply in the '477 patent IPR, the '956 patent IPR schedule has four due dates, August 10 (Due Date 3), August 20 (Due Date 4), August 29 (Due Date 5) and September 6 (Due Date 6).  Ex. K at 3.  Between the due date for Cordelia's reply in the '477 patent IPR and the Oral Hearing, the '477 patent IPR has four due dates, September 28, 2018 (Due Date 3), October 12 (Due Date 4), October 25 (Due Date 5) and November 1 (Due Date 6).  Ex. M at 4.  Needless to say, the PTAB proceedings themselves, without this litigation, will keep the parties very busy working to resolve their dispute over the next few months.

## III.   COOPER'S MOTION TO LIFT THE STAY SHOULD BE DENIED

### A.     Requirements for Staying Litigation Pending IPR Decisions

This Court has the inherent power to stay this litigation pending the conclusion of related proceedings at the Patent Office. *See Graywire, LLC v. Ciena Corp.*, No. 1:08-CV-2993-BBM, 2009 U.S. Dist. LEXIS 131906, at *8 (N.D. Ga. July 17, 2009) (*citing Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).  Indeed, there is a "liberal policy" in favor of granting motions to stay proceedings pending the outcome at the Patent Office. *Southwire Co. v. Cerro Wire, Inc*., No. 3:08-CV-92-JTC, 2009 U.S. Dist. LEXIS 131922, at *6-7 (N.D. Ga. May 12, 2009).  This liberal policy, originally recognized in the context of stays pending reexamination proceedings, has continued in the context of stays pending IPR proceedings. *See, e.g., AirWatch LLC v. Good Tech. Corp.*, No. 1:14:-CV-02281-SCJ, Dkt. 45 at 5 (N.D. Ga. Feb. 13, 2015) (acknowledging the "liberal policy" in favor of stays in the context of granting motion to stay pending IPR).

"Several courts have noted the benefits of staying infringement litigation in the face of *inter partes* review," such as disposing of the patent and ending the case; streamlining discovery, issues, defenses, evidence and trial; encouraging settlement; and reducing costs for the Court and the parties. *See, e.g., Interface, Inc. v. Tandus Flooring, Lie.,* No. 4:13-CV-46-WSD, 2013 U.S. Dist. LEXIS

158608, at *12 (N.D. Ga. Nov. 5, 2013) (*citing Tomco2 Equip. Co. v. Se. Agri-Sys., Inc*., 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008)).

To help balance the competing interests of the parties, this Court considers three factors in deciding whether to stay litigation pending completion of the IPR: "(1) whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in the case; and (3) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant." *Interface,* 2013 U.S. Dist. LEXIS 158608, at *13. Each one of these factors weighs heavily in favor of maintaining the stay.

## B. The Litigation Remains in the Discovery Phase with No Trial Date.

This case is still in its early stages. The parties are currently engaged in fact discovery, but have not yet scheduled or conducted any party depositions. No expert discovery has been taken. No *Markman* claim construction hearing or trial dates have been set. Cases in such early stages of litigation are well-positioned for a stay. *See, e.g., Intellectual Ventures II LLC v. SunTrust Banks, Inc*., No. 1:13-cv-02454-WSD, 2014 U.S. Dist. LEXIS 142295, at *7 (N.D. Ga. Oct. 7, 2014) (finding that case was "at an early stage," favoring a stay, where neither party had moved for summary judgment and the trial date had not been set, even though four depositions had been taken); *IP Co., LLC v. Tropos Networks, Inc.*, No. 1:06-CV-0585-CC, Dkt. 188 at 4 (N.D. Ga. March 5, 2014) (finding that stage of the

9

litigation weighed in favor of a stay where no claim construction hearing or trial date had been set and the parties had not engaged in any significant discovery, even though the case had been pending for several years); *Interface,* 2013 U.S. Dist. LEXIS 158608, at \*13 (granting stay pending IPR where a trial date was not set and the case was "at a relatively early stage," even though discovery was "ongoing").

Cooper does not deny that discovery has not been completed. Cooper argues instead that "the parties only await a *Markman* hearing and order to complete fact discovery." Motion at 16.[7] This falls far short of the pertinent stay factor for several reasons. The factor explores "whether discovery is complete and a trial date has been set." With respect to the first part of the inquiry, Cooper's referral to fact discovery being completed at some time in the future is an admission that it is not currently complete.

Indeed, five days before the Court entered the current stay, Cooper, in opposing Defendants' motion to strike portions of Cooper's supplemental infringement contentions, characterized the case as being in the "early stages." *See* Dkt. 84 at 2 ("No party depositions have been taken, documents are still being produced, no Markman hearing has been scheduled, no expert discovery has been

---

[7] Plaintiff Cooper Lighting, LLC's Motion to Lift Stay of Proceedings, Dkt. 113, May 4, 2018.

taken, no trial date is set, and Cordelia has moved to stay the case in part because it is still in its early stages.").  Given that the case has been almost entirely stayed since then,[8] nothing has changed.  Moreover, expert discovery is set to begin at the end of fact discovery, so it has not even started.  Hence, it is undisputed that discovery is not currently complete and that no trial date has been set.

Because this litigation is in its early stages, a stay presents an opportunity for the parties and the Court to reap maximum benefit from the pending administrative proceedings.  This factor weighs strongly in favor of granting a stay.

### C.     A Stay Will Simplify the Issues to be Resolved in this Case.

The second factor in the stay analysis is whether the litigation will be "simplified" by the PTAB proceedings.  *Interface,* 2013 U.S. Dist. LEXIS 158608, at *13.  There is no question that it will be.  First, the PTAB's has already concluded after reviewing both sides' submissions, including Cordelia's Petitions and Cooper's Preliminary Responses, that several claims in the Davis patent and several claims in the Tickner patent are "reasonably likely" to be found unpatentable.  Ex. B at 2;  Ex. D at 2.  If the PTAB's final decisions confirm that conclusion, Cordelia and Jimway can have no liability for infringement of those claims.  All the infringement and validity issues for those patent claims drop out of

---

[8] The Court excepted from the stay certain supplemental briefing on venue and related issues (Dkt. 85 at 24), but all discovery and all other deadlines have been stayed since November 13, 2017.

the case.

Second, after *SAS Inst., Inc.* the PTAB expanded the claims and grounds at issue in the IPRs to include all the claims and grounds in the '956 patent and '477 patent IPR Petitions.  Indeed, because of *SAS Inst., Inc.* Cordelia is in the extraordinary position of having insight into the PTAB's misgivings about non-instituted claims and grounds prior to submitting its replies (Due Date 2).  Further, Cordelia will have yet another opportunity to convince the PTAB at the oral hearings.  Hence, Cordelia is in a very good position to invalidate newly instituted claims that the PTAB did not initiate upon first blush.

Third, the briefs, oral argument and decision on grounds in the Tickner IPR will overlap with the non-instituted Tickner '479 and '978 patents.[9]  For example, Ground 1 of Cordelia's Petition argues that claims of the '477 patent are completely anticipated by Cordelia's own Zhang published patent application.[10] Ex. Dkt. 68-3 at 3.  This same argument, i.e., anticipation by Zhang is Ground 1 of

---

[9] Though close overlap exists in this case, there is no requirement that the issues in the IPR be identical to those in the litigation. *See, e.g., Nexans, Inc. v. Belden, Inc.*, No. 12-1491-SLR-SRF, 2014 U.S. Dist. LEXIS 20116, at *11 (D. Del. Feb. 19, 2014) ("[A] complete overlap of the issues in the litigation and the IPR is not required to establish simplification of the case."), adopted by 2014 U.S. Dist. LEXIS 32322 (D. Del., Mar. 12, 2014); *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744, 2013 U.S. Dist. LEXIS 92416, at *15 (D. Del. July 2, 2013)("Finally, while the court recognizes that this case likely presents certain questions that simply cannot be addressed through *inter parties* review, it notes that the 'issue simplification' factor does not require complete overlap.")

[10] Zhang U.S. Publication No. US 2009/0097262 A1.

Cordelia's non-instituted '479 patent IPR Petition and Ground 1 of Cordelia's non-instituted '978 patent IPR Petition.  Dkt. 68-4 at 3; Dkt. 68-6 at 3.  If the PTAB finds after reviewing the briefs and evidence that Zhang does anticipate claims of the '477 patent, Cordelia will likely argue in the litigation that this is an endorsement of Cordelia's arguments with respect to the non-instituted '479 and '978 patent claims.  Conversely, if Cooper prevails on this issue, it will likely argue that this is evidence that the non-instituted claims are not anticipated by Zhang.

Indeed, all of the four grounds at issue in the instituted '477 patent IPR appear as grounds in the non-instituted Tickner patent IPRs.  Ground 2 of the '477 patent IPR (DeCicco combined with Stimac) appears as Ground 2 of the '479 patent IPR.  *Compare* Dkt. 68-3 at 4 with Dkt. 68-4 at 4.  Ground 3 of the '477 patent IPR (Lumodan combined with DeCicco) appears as Ground 3 of the '479 patent IPR.  *Id.*  Ground 4 of the '477 patent IPR (Jones combined with Stimac) appears as Ground 2 of the '978 patent IPR.  *Compare* Dkt. 68-3 at 4 with Dkt. 68-6 at 4.  Hence, the PTAB findings on each of the Tickner '477 patent will be argued by the parties as evidence of the validity or invalidity of claims in the other, non-instituted Tickner patents.

Fourth, if any of Cooper's Davis or Tickner patent claims survive PTAB review, the time spent in the administrative proceedings will simplify the issues in

13

dispute.  Federal law estops Cordelia from asserting in litigation invalidity on the same grounds.  "The petitioner in an *inter partes* review of a claim in a patent … may not assert … in a civil action arising in whole or in part under section 1338 of title 28 … that a claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review."  35 U.S.C. § 315(e)(2).  This provision assures that Courts benefit from the efforts before the administrative agency.  Furthermore, even if the PTAB upheld every challenged claim, the parties and the court would still benefit from the work of the PTAB's three administrative patent judges.

Additionally, the PTAB provides written decisions containing not only its conclusions but also its underlying analysis.  35 U.S.C. § 318.  The reasoning and analysis of the administrative experts may assist the Court in defining the scope of the asserted claims.  *See, e.g.*, *IP Co.,* No. 1:06-CV-00585, Dkt. 188 at 4.

The PTAB rulings will narrow the issues that need to be addressed in fact and expert discovery and the issues to be decided in a *Markman* claim construction hearing, and will ultimately reduce the complexity and length of a trial.  In a best-case scenario, the rulings will result in the end of the litigation, because a critical mass of asserted claims and arguments will be resolved and the parties will settle.  If so, a great amount of unnecessary and duplicative effort in fact and expert discovery, trial preparation and trial will be avoided.

14

Cordelia's argues that the PTAB proceedings will not simplify this litigation because "[t]he '479 and '978 patent – including all of the twenty-three asserted claims in those patents – survived Cordelia's challenges." Motion at 9. This argument, however, misapprehends the second stay factor. The factor requires only that the PTAB proceedings "simplify" the litigation, not terminate it. Applying the correct standard, the only conclusion that can be reached is that this case not only *might* be simplified, but that it *will* be simplified. PTAB findings of unpatentability of individual patent claims, or perhaps even the entire asserted set of '956 patent or '477 patent claims, would relieve Cordelia and Jimway of any liability for patent infringement. All the infringement, invalidity and damages issues would drop out of the case for those claims or patents. There is no question that removing those issues from the case would simplify it.

Even in the unlikely event that the PTAB does not find any of the challenged claims unpatentable, the statutorily applied estoppel would reduce the number of invalidity issues to be resolved in litigation. 35 U.S.C. § 315(e)(2). Indeed, under those circumstances, Cooper may argue that the scope of the estoppel includes not only the actual asserted grounds for invalidity, but also grounds that Cordelia reasonably could have asserted in the IPR. *Id.* Hence, not only will the PTAB resolve the specific invalidity arguments found in the '956 patent and '477 patent IPR Petitions, but also may resolve wide swaths of grounds that reasonably could

have been asserted.[11]  The scope of the litigation will be narrowed as a result of the PTAB proceedings.

Cooper relies primarily upon two cases for legal support of its position. First, it provides a quote from *Intellectual Ventures I LLC v. Toshiba Corp.*, No. 13-453-SLR/SRF, 2015 WL 3773779 (D. Del. May 15, 2015).  However, the facts in that case were exactly the opposite of those presented here.  In *Intellectual Ventures* there were ten patents-in-suit.  Ex. N (disclosure of patents asserted in litigation).  Defendant "Toshiba petitioned for IPR of five of the ten patents-in-suit."  *Intellectual Ventures I LLC* at 1*.  The PTAB instituted on four of those patents, including Runas Patent No. 5,500,819; Rao Patent No. 5,687,132; Pourkeramati Patent No. 6,058,045; and Dervisoglu Patent No. 7,836,371.  *Id.*, fn. 2; Ex. O (first pages of instituted patents in *Intellectual Ventures*).  The following six patents-in-suit were not the subject of institution:  Rao Patent No. 5,568,431; Rao Patent No. 5,600,606; Rao Patent No. 5,701,270; Sharma Patent No. 5,829,016; Faddell Patent No. 5,938,742; and Jacobs Patent No. 6,618,788.  Ex. P (first pages of non-instituted patents in *Intellectual Ventures*).  The faces of the six non-instituted patents establishes that they are not continuations, continuations-in-part, divisionals or otherwise related to the four instituted patents.  *Compare* Ex. O with Ex. P.  Hence, six patents asserted in the *Intellectual Ventures* were

---

[11] The law governing the scope of the estoppel is in flux.

completely disconnected to the issues being briefed and argued in, and decided by, the PTAB.

Here, in contrast, there are four patents-in-suit. The two non-instituted Tickner patents are essentially the same as the instituted Tickner patent, except with different claim sets. There is substantial overlap in grounds asserted for unpatentability in the current PTAB proceedings and those asserted in the non-instituted IPRs. The claim language and scope are similar. Hence, all of Cooper's patents-in-suit are either the subject of a full PTAB trial or very closely related to one.

Cooper also relies on this Court's decision in *MiMedx Group, Inc. v. Liventa BioScience, Inc.*, No. 1:14-cv-1178-MHC (N.D. Ga. Apr. 6, 2015), ECF No. 122 (attached to Motion as Ex. F). However, *MiMedx Group* is easily distinguished. There, patent infringement was only a part of the action. The complaint included causes of action for false advertising, unfair competition, and deceptive trade practices. *Id*. at 2. "[T]he Court fails to see how the non-patent claims, not connected to potential infringement of the Patents in Suit, would be affected by IPR proceedings." *Id*. at 10. Moreover, at the time of the decision, the PTAB had not yet issued decisions on institution for the pending IPRs, leaving a great amount of uncertainty.

> If the PTO initiates an IPR, its scope is uncertain until the PTO's
> determination, because the PTO may choose to review "all or some of

the grounds of unpatentability asserted for each claim."  37 C.F.R. 42.108(a).  Even if all the grounds in a petition are well-taken, the PTO may authorize the IPR to proceed on only "some of the challenged claims" or on only "some of the grounds of unpatentability asserted for each claim."

*Id*. at 10.

In contrast, the present case is exclusively a patent infringement action. Unlike *MiMedx Group* there are no unrelated, non-patent causes of action. Further, because of *SAS Inst., Inc.*, all of the claims and all of the grounds for two of the four patents have been instituted.  The benefits of the pending PTAB proceedings are not speculative - all the infringement, validity and damages issues will either fall out of case for two of the four patents or, at a minimum, some of the invalidity defenses will be estopped.

Further, the grounds asserted for the instituted Tickner patent are similar to those asserted for the non-instituted Tickner patents.  Every part of this patent action will be touched upon by what transpires before the PTAB over the next few months.  It makes no sense to double track this case when at least some of the litigation effort will be wasted.  It makes more sense for the parties to focus their efforts during the next few months on resolving the validity aspects of the patents-in-suit.

Cooper argues that judicial economy is not served by a stay at this time because the estoppel will be in force regardless of the outcome of the PTAB's final

decision.  Motion at 12.  This argument wrongly assumes that all Cooper's patent claims will survive the PTAB proceedings even though the PTAB concluded that a substantial number of claims are "reasonably likely" invalid.  The intended efficiency of the PTAB proceedings is to save resources by not having to litigate patent claims that are found unpatentable by Patent Office review.  The benefit is that these issues can be decided by administrative agency and therefore reduce the burden on the courts.  To press ahead with litigation in parallel with the PTAB proceedings undoes that benefit.

Cooper also argues that the burden of litigation will not be reduced because:

> Cordelia appears to be making the same section 102/103 prior art arguments in this litigation with respect to claims that were not instituted as the arguments being made in the IPRs for claims that were instituted.  Thus, those arguments will be developed either way.

Motion at 13.  As indicated above, the parties agree that there is substantial overlap in grounds and claims between the instituted Tickner patent and the non-instituted Tickner patents.  However, this mitigates in favor of a stay not against it.

The parties' IPR briefs and arguments, and the PTAB's final decision will further develop the record and provide additional evidence one way or another with respect to the non-instituted claims.  Again, to the extent Cordelia prevails, patents, claims and issues drop out of the case and a further record is created with respect to the issues remaining.  To the extent Cooper prevails, Cordelia invalidity arguments with respect to the instituted patents will be limited, and a fuller record

19

will be created.  Either way, the substantial time, effort and resources put into the

IPR process will save more time, effort and resources, but only if the litigation is

stayed.  Accordingly, this factor also weighs strongly in favor of a stay.  *See Barco,*

*N.V. v. Eizo Nanao Corp.*, No. 1:11-CV-2964-TCB, Dkt. 72 at 5 (N.D. Ga. Feb. 6,

2015) (finding that despite the patentee's willingness to drop four claims under

IPR review, a stay was nevertheless warranted because "[t]he four claims still

under [IPR] review in the PTO share language and limitations with other claims

currently asserted against [the defendant], and the arguments made by both parties

in PTO proceedings will likely impact later claim construction and infringement

determinations."); *Blatchford Prods., Ltd. v. Freedom Innovations, LLC*, No. 1:14-

CV-529, Dkt. 51 at 5 (S.D. Ohio Sept. 29, 2015), copy attached as Ex. Q ("Since

the '312 Patent and the '991 Patent are related the PTAB's determination of the

meaning and scope of the claims of the '312 Patent [during IPR] will undoubtedly

provide useful guidance on the meaning and scope of the claims of the '991 Patent,

and, therefore, on the issues of infringement and invalidity.").

### D.    A Stay Will Not Unduly Prejudice Cooper.

A stay will not unduly prejudice Cooper or place it at a tactical

disadvantage.  First, because of the recognized benefits of resolving disputes at the

administrative level rather than litigation, the "undue prejudice" must constitute

more than the delay due to proceeding in the Patent Office.  It is well established

that the mere delay inherent in any stay does not establish undue prejudice. *Adair v. Boat Dock Innovations, LLC,* No. 1:12-cv-1930-SCJ, 2013 U.S. Dist. LEXIS 63921, at *8 (N.D. Ga. Feb. 27, 2013) ("As to Plaintiff's claim of prejudice caused by delay in the resolution of this action, the general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay.").

Second, the record in this case strongly supports that Cooper is not prejudiced by delay. It did not mark the numbers of the asserted patents on its products prior to filing suit, even though the earliest patent issued more than three years earlier. Ex. R (Cooper's Response to Interrogatory No. 15) at 17 ("Plaintiff further states that its recessed LED downlight products have been virtually marked with the patents-in-suit at least since November 10, 2016 [after the date of suit]." This reflects Cooper's lack of interest in asserting its purported patent rights in a timely fashion. *See also id.* at 18 ("Plaintiff states that there was no formal marking policy on its products at the time they were developed and any such marking was done on an ad hoc basis.").

In addition, Cooper has not sought a preliminary injunction to stop any Cordelia commercial activity pending the litigation. This further reinforces the conclusion that Cooper can be adequately compensated by damages and will not being irreparably harmed by the stay. The "availability of money damages is sufficient to protect plaintiff from prejudice," and this type of suitable relief weighs

in favor of a stay.  *Tomco Equip. Co. v. Se. Agri-Sys., Inc*., 542 F. Supp. 2d 1303, 1308 (N.D. Ga. 2008); *see also Ever Win Intern. Corp. v. Radioshack Corp*., 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."). Cooper makes no showing that Cordelia is anything other than it appears, a solvent, ongoing organization capable of paying its liabilities.  Hence, any Cordelia infringement of a valid Cooper patent claim occurring during the stay period would ultimately be compensated by money damages.

Cooper argues "four sub-factors" to support a finding of undue prejudice. But none of those factors changed since the Court entered the stay in November. The date of the review request and stay, sub-factors 1 and 2, had already occurred prior to entry of the stay – nothing has changed to support a new finding of undue prejudice.

For the third sub-factor is the status of the review proceedings.  The status is that ***all the grounds*** and ***all the claims*** of two patents have been instituted.  The oral hearing will occur in four months for one IPR and six months for the other. This weighs in favor of a stay.  Finally, the relationship of the parties has not changed since the stay was entered.  Cooper makes no showing that Cordelia is taking advantage of the pendency of the litigation or seeks to do so in the future.

22

Further, Cooper is in no position to complain that Cordelia delayed in filing the IPRs.  Cooper knew of Cordelia's products more than a year before alleging that they infringed.  Ex. G (Cooper's Response to Interrogatory No. 2) at 3-4 ("Plaintiff states to the best of its knowledge that its first knowledge of infringement occurred in approximately March or April 2015.").  A plaintiff's demonstrated delay in filing a suit weighs against any claim of prejudice from a stay.  *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (holding that a one-year delay in filing indicated a lack of prejudice from a stay).

Moreover, Cordelia should not be criticized for not filing its IPRs sooner.  Cooper did not identify which of the 70 claims in its four patents it intended to assert against Cordelia until Cooper's infringement contentions of November 16, 2016.  Until then, Cordelia did not know if Cooper was asserting four patent claims or 70 claims, and if not 70, which particular claims would be asserted in the action and which would not.  It would have been a waste of resources to prepare petitions challenging the validity of dozens of patent claims that are not asserted by Cooper.

After learning of Cooper's intent to assert such a broad array of similar claims, Cordelia had to undertake the task of evaluating and supplementing prior art references, analyzing the grounds for invalidity, and preparing four highly detailed IPR petitions and supporting declarations of technical experts.  *See* Dkt.

23

68-3, 68-4, 68-5, and 68-6.[12]  The year-long period in the statute recognizes that the preparation of competent IPR petitions is a time-consuming task.  Cooper was entitled to institute this litigation under federal patent law, and Cordelia was entitled to timely invoke the IPR process to prepare four petitions; thus, Cooper cannot reasonably complain of the rights afforded to Cordelia by that same statutory framework.  In the light of the entire record of this action, all three factors weigh strongly in favor of granting a stay.

## IV.   CONCLUSION

Cooper's complaint alleges no cause of action other than infringement of its four patents.  All the patent claims presented to the Court will necessarily be touched by the issues presented to the Patent Office.  This action has already been stayed during half of the time for the IPRs to be resolved.  Maintaining the stay for the relatively short time left to the conclusion of the IPRs provides substantial benefits to the parties and the Court, and will not prejudice Cooper.  Cooper's motion to lift the stay should be denied.

---

[12] Cordelia's lengthy petition papers previously submitted and cited herein are in fact abbreviated versions of the petition papers filed with the Patent Office as the declarations of Cordelia's expert and copies of the references were not attached.

Dated:  May 18, 2018                Respectfully submitted,

*/s/ Coby S. Nixon*
Coby S. Nixon (GA Bar No. 545005)
cnixon@taylorenglish.com
Seth K. Trimble (GA Bar No. 851055)
strimble@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Phone: (770) 434-6868

Lester J. Savit (admitted *pro hac vice*)
lsavit@onellp.com
Paul Y. Feng (admitted *pro hac vice*)
pfeng@onellp.com
Stephen M. Lobbin (admitted *pro hac vice*)
slobbin@onellp.com
John E. Lord (admitted *pro hac vice*)
jlord@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, CA  92660
Phone: (949) 502-2870

*Attorneys for Defendant Cordelia Lighting,*
*Inc. and Counterclaim-Plaintiff Jimway, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, counsel certifies that the foregoing was prepared in Times New Roman, 14 point font, in compliance with Local Rule 5.1C.

*/s/ Coby S. Nixon*
Coby S. Nixon
Georgia Bar No. 545005
Attorney for Defendant Cordelia Lighting,
Inc. and Counterclaim-Plaintiff Jimway, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2018, I electronically filed the foregoing MEMORANDUM IN OPPOSITION TO COOPER LIGHTING, LLC'S MOTION TO LIFT STAY OF PROCEEDINGS with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record in this action.

*/s/ Coby S. Nixon*
Coby S. Nixon
Georgia Bar No. 545005
Attorney for Defendant Cordelia Lighting,
Inc. and Counterclaim-Plaintiff Jimway, Inc.